UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIE A. NELSON,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>               Defendant. | NO. C07-0042CRD<br><br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

      Plaintiff Marie Nelson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court affirms the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

      Plaintiff is a forty-six-year-old female, forty-one years old at the alleged disability onset date. Administrative Record ("AR") at 19. She has a General Equivalency Diploma; she has work experience as a caregiver, daycare worker, a bartender, and a waitress. AR at 19. Plaintiff applied for SSI disability benefits in June 2002 (Dkt. 14 at 1), alleging disability as of February 2002, due to a back injury, hepatitis C, rheumatoid arthritis, headaches, fatigue, vomiting, and back and hand aches, (AR at 75).

ORDER - 1

Her claim was denied initially and upon reconsideration. AR at 33, 38, 41. A *de novo* hearing before ALJ Verrell Dethloff was held, for which an unfavorable decision issued on January 12, 2005. AR at 30. The ALJ heard testimony from two witnesses: plaintiff, who was represented by counsel, John Gustad, Esq., and a psychiatric medical expert, Tracy Gordy. *Id*. On June 4, 2005, the ALJ issued a decision again finding plaintiff not disabled. *Id*. at 18-30. Plaintiff requested review by the Appeals Counsel and review was denied (AR at 7-9), rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On January 19, 2007, plaintiff initiated this civil action for judicial review of the Commissioner's final decision. Dkt. No. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

///

///

ORDER - 2

IV. EVALUATING DISABILITY

As the claimant, Ms. Nelson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded.

## V. THE ALJ'S FINDINGS

Step One: The ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. AR at 29, Finding 1.

Step Two: The ALJ found that plaintiff's "hepatitis C, chronic foot neuralgia, and depression" are medically determinable severe impairments. *Id*., Finding 2. However, plaintiff's "nausea, constipation, diarrhea, anxiety, lumbosacral strain, hand aches, and headaches" were not severe, and noted that rheumatoid arthritis is not a medically determinable impairment. *Id.*

Step Three: The ALJ found plaintiff's impairments did not meet or equal the requirements of any listed impairment. *Id*., Finding 3. The ALJ next determined that plaintiff retained a RFC for a significant range of light work. *Id*., Finding 10.

Step Four: The ALJ found that plaintiff could not perform any of her past relevant work. *Id*., Finding 6.

Step Five: The ALJ determined that plaintiff could perform a significant number of other jobs in the national economy. The ALJ therefore concluded plaintiff was not disabled as defined in the Act. *Id*., Finding 12.

///

ORDER - 4

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Was the ALJ required to consult a vocational expert ("VE") to identify what jobs plaintiff could perform?
2. Does additional evidence submitted after the ALJ's decision warrant remand?
3. Did the ALJ err in assessing plaintiff's credibility?

Dkt. No. 14 at 1.

## VII. DISCUSSION

*A.  The ALJ was not required to consult a VE to identify what jobs plaintiff could perform.*

At step five, the ALJ used the Medical-Vocational Rules ("guidelines" or "grids") to determine that plaintiff could perform a significant number of light work jobs in the national economy. AR at 30. Plaintiff challenges the ALJ's use of the Grids without consulting a VE, arguing, that because the ALJ found her to have non-exertional limitations, a VE consultation was required. Dkt. 14 at 4-11. Specifically, plaintiff asserts that the ALJ's finding of a "moderate concentration deficit," a severe mental impairment at step two, and the ability to perform repetitive work, are significant limitations requiring the expertise of a VE.

"There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical-Vocational Guidelines... Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted). An ALJ's use of the grids is permissible where the grids "completely and accurately represent a claimant's limitations, such that a claimant is able to perform the full range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 404.1560(b)(3); Part 404, Subpart P, App. 2, Rule 200(e). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tacket*, 180 F.3d at 1102. Plaintiff reasons that since the ALJ

ORDER - 5

determined she had a "moderate concentration deficit," a severe mental impairment under step two, and found that she could perform repetitive work, that these impairments are significant non-extertional limitations requiring VE consultation. This Court does not agree. "[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (finding substantial evidence supported the ALJ's finding of moderate depression, and determination that it was not a severe nonexertional limitation, and therefore holding it did not prohibit reliance on the grids without assistance of a VE). Although plaintiff here relies upon *Tacket* for the proposition that her moderate concentration deficit was a significant limitation requiring VE testimony[2] (Dkt 14 at 6), the *Tacket* court found that because plaintiff suffered from significant nonexertional limitations not contemplated by the grid, the ALJ was required to call upon a VE. Specifically, the *Tacket* court found the ALJ erred in: (1) failing to credit uncontroverted medical evidence of a (nonexertional) 30-minute sitting limitation, and consequently, (2) failing to consult a VE where the grid did not contemplate the nonexertional limitation of moving every 30 minutes. The court found the ALJ's determination that Tacket could sit throughout an eight hour workday, with breaks only every two hours, was not supported by substantial evidence in the record as a whole. *Tacket*, 180 F.3d at 1102-04. In contrast, here, the ALJ did find plaintiff to have a moderate concentration deficit, based in large part on the findings of nonexamining physicians, doctors Peterson and Clifford (AR at 27), with which plaintiff does not take issue. Thus, unlike in *Tacket*, the ALJ accepted the medical experts' assigned limitations; therefore *Tacket* is not applicable for the proposition plaintiff cites.

Plaintiff further asserts that because doctors Peterson and Clifford reported that plaintiff had "moderate" mental limitations, that VE testimony was required because, "[b]y definition, such 'moderate' limitations are 'significant.'" Dkt. 14 at 8-9. Plaintiff does not explain why or how this conclusion is reached, or on what authority the assertion is based. Although a limitation is deemed moderate, it is not

---

[2]Plaintiff also cites *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002), *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), and *Ramirez v. Barnhart*, 372 F.3d 546 (3rd Cir. 2004), however, each of the cases address the sufficiency of the hypothetical question presented to the VE and do not address the issue of whether a VE was required in the first place.

ORDER - 6

necessarily a significant or a sufficiently severe nonexertional limitation that is not contemplated by the grid. Directly on point is *Hoopai*, 499 F.3d at 1076-77, wherein the court upheld the ALJ's conclusion as supported by substantial evidence in the record that plaintiff's "moderate depression" was not a sufficiently severe nonexertional limitation requiring VE testimony. In *Hoopai*, as in the present case, the ALJ found the moderate impairment was not so severe as to be outside the grids. Specifically, the ALJ here found:

> I conclude that the claimant has moderate difficulties in maintaining concentration, persistence, or pace, which is consistent with the findings of Dr. Peterson and Dr. Clifford. I note that the claimant reported reading for a half hour and watching two hours of television during the day. She continues to drive, which suggests she is able to maintain concentration. The claimant is able to do her housework in a timely fashion. I do not see evidence of repeated episodes of decompensation of extended duration.

AR at 24.

A review of the administrative record, including reports from plaintiff's physicians, does not reveal any contradictory evidence regarding plaintiff's concentration limitations, nor does plaintiff point to any. Plaintiff testified she has trouble concentrating; however, as discussed further below, the ALJ did not find her subjective complaints entirely credible because they were inconsistent with her medical history and daily functioning. AR at 25-27.

Plaintiff next asserts that the finding of a "severe" mental impairment at step two of the sequential analysis required vocational expert testimony at step five. Dkt. 14 at 10. In support of this assertion, plaintiff cites *Edlund v. Masanari*, 253 F.3d 1152, 1160 (9th Cir. 2001)[3]. Plaintiff states that, "In *Edlund*, the Ninth Circuit recognized that a vocational expert testimony is required at step five whenever claimant has a severe mental impairment at step two." *Id.* at 10-11. Plaintiff misstates the rule of law and incorrectly represents *Edlund*. *Edlund* contains no such discussion that a VE is required at step five whenever there is a finding of a severe mental impairment at step two. Moreover, in *Edlund* the ALJ did utilize a VE; the issue was not whether a VE was required, but the propriety of the hypothetical question presented to the VE. Thus, *Edlund* is also not helpful to plaintiff's case for this reason as well.

---

[3]Plaintiff also cites *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998), for the same rule; however, *Reddick* is inapplicable here for the same reasons discussed with respect to *Edlund*.

ORDER - 7

The applicable rule, as set forth in *Hoopai* is that: "a step-two determination that a non-exertional impairment is severe does not require that the ALJ seek the assistance of a vocational expert at step five," because, "[t]he step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai* 499 F.3d at 1076 (holding a finding of severity at step two is not dispositive of the step five determination of whether nonexertional limitations are at a sufficient level of severity to make the grids inapplicable). The court explained its reasoning:

> Clearly, the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two, otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made. This would defeat the purpose of the grids because a claimant could not reach the step-five determination without making out a prima facie case of a severe disability at step two.

*Hoopai* at 1076.

Thus, under *Hoopai*, plaintiff's assertion that VE testimony was required because of a finding of a severe mental impairment at step two is incorrect.

Plaintiff also asserts that because the ALJ restricted her to simple and repetitive tasks, VE consultation was required. Dkt. 14 at 5-6. Plaintiff cites no controlling authority or rule in support of this assertion. The ALJ did not restrict plaintiff to simple and repetitive work but found she retained the RFC capable of performing such work, at a minimum. AR at 29-30. Plaintiff notes Third Circuit authority, *Allen v. Barnhart*, 417 F.3d 396, 401-407 (3rd Cir. 2005) for the proposition that restriction to repetitive work is a reason to obtain VE testimony and that "Social Security Ruling 85-15 does not justify the failure to obtain vocational expert testimony" where there is a repetitive work restriction. Dkt 14 at 6. *Allen,* however, remanded for further elaboration by the ALJ regarding how the specific limitations experienced by Allen would impact his ability to perform simple repetitive tasks. The *Allen* court noted that the ALJ's summary reference to SSR 85-15 and lack of specificity regarding Allen's limitations were insufficient to uphold the finding of the ability to perform repetitive work. Regardless, here, the ALJ did not cite Social Security Ruling 85-15 ("SSR 85-15") for his conclusion that plaintiff was capable of

ORDER - 8

simple and repetitive tasks. The ALJ noted in the "findings" section that plaintiff retained the RFC for such work. The ALJ's discussion of SSR 85-15 was not analyzed in that context. Moreover, a limitation to simple and repetitive work is not a finding of a severe limitation that would necessitate VE testimony under the standard set forth in *Hoopai*. In this case, substantial evidence in the record supports the ALJ's conclusion that plaintiff's concentration limitation was not sufficiently severe such that it significantly affects her ability to work beyond her exertional limitations. There is nothing in the record that suggests a moderate concentration deficit with limitation to repetitive work would overtake plaintiff's ability to perform the range of light work the ALJ found her capable of performing, or that VE testimony would have changed the ALJ's decision. Accordingly, this Court finds no error of law: the moderate concentration deficiency was not a sufficiently severe nonexertional limitation that prohibited the ALJ's reliance on the grids without the assistance of a VE.

   B.  *The additional evidence submitted to the Appeals Council does not warrant remand.*

   Plaintiff asserts that evidence she submitted to the Appeals Counsel, after the ALJ's decision, warrants remand to the ALJ for re-evaluation with her new doctor's opinions. Dkt. 14 at 11. Specifically, plaintiff asserts the evidence shows that: (1) she may have an autoimmune disease; and (2) she cannot perform even sedentary work.[4] *Id.* at 13. The ALJ rendered his decision denying benefits in June 2005. AR at 30. In December 2005, plaintiff submitted additional evidence consisting of the treatment notes and declaration of her (then) new treating physician, Mary Jo Kintner, M.D., to the Appeals Counsel. AR at 614-31. The Appeals Counsel considered the additional evidence and denied plaintiff's request for review. AR at 7. Although the Appeals Council affirmed the decision of the ALJ, this evidence is part of the record on review to this Court for determination of whether the ALJ's decision is supported by substantial evidence. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

---

[4] Plaintiff additionally notes in this section of her brief that the additional evidence discusses plaintiff's substance abuse problem, which was not addressed by the ALJ. However, plaintiff does not explain whether or how consideration of her substance abuse problem would change the ALJ's decision in her favor.

ORDER - 9

In her December 2005 declaration, in a verbal question and answer format led by plaintiff's counsel, Dr. Kintner stated that she had been treating plaintiff since June 2005 and found that plaintiff,

> ...was severely hyperthyroid, was severely anxious, having tachycardia, palpitations, chronic pain. My understanding was that she came to me with some kind of neuropathy, having chronic joint pain, and she has hepatitis C. Ms. Nelson had also begun using IV drugs.

AR at 614-15.

Dr. Kintner further noted that although plaintiff did not have the characteristic joint swelling indicative of rheumatoid arthritis, that she did have an elevated level of rheumatoid factor which was "probably accurate that she has some autoimmune problems that attack her joints and her thyroid." AR at 615. Dr. Kintner did not rule out the possibility of rheumatoid arthritis, but noted that she had not observed plaintiff exhibiting all symptoms of the disease, including joint swelling (AR at 616). Dr. Kintner found plaintiff credible and noted she had been compliant in her treatment (*Id.*); she found plaintiff "profoundly impaired in her ability to pay attention," as a result of hyperthyroidism, medication and depression (AR at 617), and noted that she treated plaintiff's heroin drug use with Methadone (AR at 615). Dr. Kintner opined that plaintiff would be unable to perform light or sedentary work. AR at 617-18. Plaintiff argues that this evidence requires remand for evaluation of Dr. Kintner's notes and declaration. Dkt. 14 at 11.

After the ALJ has rendered an opinion, treating physician opinions that are solicited by claimant's counsel for litigation purposes may be rejected as less persuasive. *See, e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *cf. Johnson v. Callahan*, 975 F. Supp. 1366, 1371 (D. Or. 1997) ("Medical reports issued after the Commissioner's decision . . . are deemed less persuasive than those issued prior to the decision."). In this case, Dr. Kintner's treatment notes begin on June 28 (AR at 629), several weeks after the ALJ denied benefits on June 4 (AR at 30). Nevertheless, the declaration in this case, coming from a treating physician with expertise in the field, is not devoid of all probative value.

In a signed declaration, Dr. Kintner's ultimate opinion regarding plaintiff's inability to work was given in response to questions from plaintiff's counsel. However, whether intentional or not, counsel misstated the amount of weight the ALJ found plaintiff capable of carrying: the ALJ found she retained

ORDER - 10

the ability to carry 10 pounds frequently and 20 pounds occasionally (AR at 27), whereas counsel asked Dr. Kintner whether she agreed with the ALJ that plaintiff could carry 20 pounds frequently, being two-thirds of the day (AR at 617).  The difference between carrying 10 and 20 pounds frequently may have effected the doctor's answer.  Regardless, review of the remainder of the evidence shows no objective finding of Dr. Kintner's is significantly different from that of the physicians' findings already considered by the ALJ.  AR at 614-31.  Accordingly, even considering the additional evidence of Dr. Kintner's declaration and notes, this Court finds the ALJ's decision was based on substantial evidence in the record, and, as such, does not warrant remand.  *Ramirez*, 8 F.3d at 1452; *Bayliss*, 427 F.3d at 1214.

        *C.*        *The ALJ did not err in assessing plaintiff's credibility.*

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)*; Thomas*, 278 F.3d at 958-59.  In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In his decision, the ALJ discussed plaintiff's credibility in detail:

> In weighing the claimant's subjective complaints against the objective evidence, I find that she is not entirely credible.
>
> On her disability report, she identified back and hand aches as disabling impairments, but the medical record indicates that these were transient complaints.  The claimant alleged that rheumatoid arthritis prevented her from working, but she was not actually diagnosed

ORDER - 11

with this condition. Despite her complaint of "very bad fatigue," the record demonstrates that the claimant remained fairly active even while undergoing interferon treatment.

I note that she was repeatedly described as being in good health and good spirits. At the hearing, the claimant testified that she could only do housework for an hour. However, on her activity questionnaire she reported spending her time cleaning different rooms "most of the day." The claimant drives, makes beds, vacuums, does dishes, reads, watches television, manages the household finances, and does yard work.

She was also able to arrange a subsidized mortgage to purchase a mobile home. I note that the claimant's parenting activities are similar to medium level work described in the Dictionary of Occupational Titles (Child monitor, and foster parent). Her housekeeping activities are consistent with light exertional work described in the DOT (housekeeping cleaner). Parenting duties fulfilled despite alleged disability may militate against credibility. Complaints of pain-imposed disability may be discredited where the claimant is able to spend a substantial part of his day in the performance of functions which are transferable to a work setting. Activities generally, that is, absent a specific finding of transferability to a work setting, may also discredit testimony of pain of a disabling degree.

The claimant's foot pain obviously improved with the cortisone injections, which she stated were quite helpful. She reported that Neurontin also provided relief. Dr. Gabay concluded that the claimant's foot neuropathy was likely the result of alcohol abuse and instructed her to stop drinking. However, the claimant continues to drink contrary to medical advice.

She alleges headaches as a basis for disability, but the evidence indicates that they occurred infrequently. I note that in January of 2004 the claimant reported that headaches were not a problem lately.

The claimant was clearly noncompliant with psychotropic medications and self discontinued a number of prescribed medications including Zoloft, Wellburtin, Xanax, and Celexa. She apparently did not even try Lexapro. Her noncompliance with medications was not limited to psychotropics as she also self discontinued Skelaxin, Nebutone, Relafen, and Neurontin. Interestingly, the claimant actually reported improvement with both Zoloft and Neurontin. It is reasonable to conclude that she would have been more diligent with medication trials if her symptoms were as bad as alleged. If an impairment can be controlled by medication it cannot be found to be disabling. It follows that failure to follow treatment recommendations reflects on the credibility of impairments.

I note that none of the claimant's treating physicians were anxious to endorse an inability to work. [sic]sense of any treating source opinion that claimant is totally disabled is supportive of a conclusion that claimant is not disabled.

The claimant provided inconsistent reasons for leaving her last job, which further detracts from her credibility. On her disability report she indicated that she was no longer able to lift her client or even perform the simple tasks of a caregiver. However, she told Dr. Bartlett that she stopped working because her client went into a skilled nursing facility. The claimant told Mr. Benjamin that she stopped working when the elderly woman that she was caring for passed away. The claimant testified that she received Temporary Assistance for Needy Families (TANIF) payments for a year and the record reflects that she was dropped from the public assistance roles, which was undoubtedly a considerable motivating factor in her pursuit of Social Security disability benefits. I note that claimants

ORDER - 12

> earnings record demonstrates that she is not particularly motivated to work outside the home. She reported no income between 1992 and 1996 and her earnings were low or nonexistent in all other years. Motivation and the issue of secondary gain must be considered in assessing the credibility of the claimant's allegations of disability.

AR at 25-27 (citations omitted).

Plaintiff claims that substantial evidence does not support the ALJ's adverse credibility finding because the ALJ did not provide clear and convincing reasons for rejecting evidence that plaintiff's daily activities were limited and there was no evidence of plaintiff malingering. Dkt. 14 at 13-14.

The Court finds that the ALJ's detailed analysis contains clear and convincing reasons for not fully crediting plaintiff's subjective complaints. The ALJ in his summary and analysis of the medical evidence noted the lack of objective medical evidence supporting plaintiff's complaints; he observed that the degree of limitation alleged by plaintiff as a result of her impairments was not supported by the medical record; he also noted that none of the physicians opined that she was disabled; he noted that plaintiff had a limited work history and applied for Social Security only after she had been denied public assistance; he noted that plaintiff had been non-compliant with treatment recommendations, in that she continued to drink alcohol after being advised to stop, and that she had been noncompliant with prescribed medications (AR at 25-27). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (stating that an unexplained or inadequately explained failure to follow a prescribed course of treatment is a relevant factor in assessing credibility). Accordingly, the Court finds that the ALJ properly determined, based on the totality of the record, that plaintiff's subjective allegations were less than fully credible. The ALJ's credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to "great deference"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

///

///

///

ORDER - 13

## VIII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is DISMISSED.

DATED this 28th day of February, 2008.

                                                  s/Carolyn R. Dimmick
_____
Carolyn R. Dimmick
United States District Court Judge

ORDER - 14